By DANIEL, J., to be a trustee for the plaintiffs, although he acquired nothing by the sale, as the plaintiffs were not guilty of any laches, and had a specific right to the slave.
By HENDERSON, C. J., to stand in the place of the husband, and being a privy in estate to be affected with the trust declared in the settlement.
Per DANIEL, J.: The act of 1812, authorizing the sale of trust estates by execution, applies where the trust estate of the defendant is coextensive with the legal title; not where the trustee holds for the defendant for life, with remainder to others.
The bill sought to have the negroes conveyed to the plaintiffs, and an account of their hires and, in case of failure therein, to subject the defendants Cooke and Jeffreys for a breach of trust.
The defendant Perry relied upon the act of limitations and the act of 1820 (Rev., ch. 1055) to quiet the title of persons in possession of slaves; and it was agreed that the questions made upon his answer should be determined before any others were discussed.
Such a trust as Freeman had in the property was not subject to be sold under an execution, by virtue of the act of 1812. That act operates as a legislative conveyance of the legal estate to him who purchases the use, for it declares that the purchaser shall hold and enjoy the property by force and virtue of the execution, freed and discharged from the legal title of the trustee, who was before the sale possessed in trust for the defendant in the execution. The Legislature meant to subject those trusts to sale under execution, of which the cestui que trust might, in a court of equity, have enforced a conveyance of the legal estate from the trustee to himself. The act embraces only such trust estates as are coextensive with the legal estate held by the trustee; so that the legislative divestment of the legal estate from the trustee should not operate to the injury of third persons or any ulterior remainders in trust.
If Freeman's life interest in these slaves could have been sold by execution under the act of 1812, the legal estate would have been, by operation of the sale, and the conveyance of the sheriff, transferred from the trustees to the purchaser. There would have been left no legal estate in the trustee to have upheld and fed the uses and trusts (246) contained in the ulterior limitations and remainders mentioned in the deed of settlement. These equitable remainders must have been all destroyed, for the want of a legal estate in fee, in the trustees, to have fed and supported them. The Legislature did not mean that the act should work such an extensive mischief; it meant that it should operate upon plain express trusts, which trusts were coextensive with the legal *Page 200 
estate in the trustee. It never intended that an execution should interfere with complex trusts, or where there was a series of successive trusts, arising in a deed or will, all fed from the same legal estate. The sale of the slaves made by the sheriff was void; Freeman's trust estate being only a life estate. There were by the deed of settlement ulterior limitations of trusts, led by the legal estate in the trustees; therefore, the execution did not reach any of the trusts, notwithstanding, the trustees, the sheriff, and Perry all believed that the trust interest of Freeman was by law subject to be sold; and under that belief the sheriff did sell, and Perry, with full notice of the plaintiff's title under the settlement, purchased the slaves at the sale, and took a conveyance of them from the sheriff. The trustees forbade the sale and demanded the slaves of the defendant, and he refused to deliver them, but they never brought any action at law to effect a recovery. The trustees were barred by the act of limitations, and had they brought an action of detinue for the slaves, against Perry, after three years from the time of his purchase, they would have failed in it. The defendant Perry now contends that the plaintiffs have a remedy against the trustees for breach of trust in neglecting to sue him, and recovering the slaves, before his estate in the same was ripened into a good title by the act of limitations.
I grant that the trustees are liable to the plaintiff; but have they not a right to elect to consider Perry as being a trustee for them under the circumstances of the case, and follow the property in his hands? The plaintiff Harriet was a feme covert until a less time than three years before the filing of this bill, and the other plaintiffs are (247) infants. Suppose the trustees were insolvent, must the loss fall on the plaintiffs, and Perry be permitted to hold the property, although he had express notice of the contents of the deed of settlement? If the trustees had have made a conveyance to Perry of the slaves, with notice to him of the trusts, a court of equity would have held him a trustee to perform all the trusts in the deed. Will the manner in which he has obtained the possession of the slaves destroy the plaintiff's rights, although the legal title of the trustees is destroyed by the acts of 1715 and 1820, and by operations of the same their legal title is transferred to him? The sheriff sold the interest which Freeman had in the slaves; and although it was not subject to execution, yet the sheriff intended to pass that estate by the sale, and Perry intended to take the same, not by way of a trespass or tort, but by a contract of purchase, having full notice at the time of the trusts.
I admit that a disseisor, abater, or intruder, or any person who holds the estate in the post, although they have notice of a trust arising out of the estate, will not be considered by a court of equity as trustee. It is said *Page 201 
by the counsel for Perry that their client holds these slaves neither by privity of estate, privity of contract, nor by fraud. Furthermore, that the trustees, Cooke and Jeffreys, are barred of their legal title by the act of limitations, and that the defendant is answerable for the slaves neither at law to them nor in equity to the plaintiffs. The sheriff, when he levied on the slaves, did not intend to commit a tort. He levied under the belief that the equitable estate of Freeman could be sold by virtue of the act of 1812. Perry purchased under the same belief, and that the sale would by operation of law transfer to him both the legal and equitable estate during the life of Freeman. Shall Perry be now heard to say that there is no privity between him and the original trustees? That this Court cannot, consistently with its own rules, declare him a trustee, although he had notice of the ulterior trust of the settlement? I think he cannot be permitted to set up such a defense, and (248) although the original trustees are barred by the act of limitations, and cannot regain the legal estate, yet in consideration of the manner in which Perry obtained the slaves, viz., by contract, he must be declared and considered by this Court to hold them as a trustee for the plaintiffs. The rents and profits of the estate were liable in equity to the creditors of Freeman; he might have rented the land and hired the slaves, and received the money himself, or paid his debts with it. An assignment by Freeman, during his life, to raise money to pay his creditors would have been protected in equity, particularly where the assignee had seen to the application of the purchase money. The purchase money in the present case was applied to the debts of Freeman, and I think that this Court, under such an equity, set up by Perry, would have stopped the trustees in prosecuting a suit at law against him for the recovery of the slaves. But the court would have first seen that the fund was safe and subject to be surrendered to the trustees on the death of Freeman. Townsend v. Windham, 2 Ves. at p. 10; Codagan v. Kennet, Cowp., 432; Fearne on Remainders, 408, 9, 10, 13 Am. Ed. We cannot permit Perry to protect himself from the trust, of which he had notice, by hearing him now assert that either the sheriff when he levied was a tort feasor, or that he himself committed a tort when he took the slaves home; and that now he is beyond the reach of this Court. It may be stated as a rule in equity that all persons coming into possession of trust property, with notice of the trust, shall be considered as trustees, and bound with respect to that special property, for the execution of the trust. Daniels v. Davidson, 16 Ves., 249; Adair v. Shaw, 1 S. L., 262; 2 Mad., ch. 125. I think that Perry should be considered as a trustee of the slaves mentioned in the bill, for the plaintiffs, and that he be decreed to deliver them and their issue to either of the parties, and account for their hires. *Page 202